UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DEBORAH R. WAGNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-CV-64-HBG |
| | ) | |
| ANDREW M. SAUL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 14]. Now before the Court is Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 15 and 16] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 and 18]. Deborah Wagner ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **GRANT** Plaintiff's motion and **DENY** the Commissioner's motion.

**I. PROCEDURAL HISTORY**

On April 4, 2005, Plaintiff's application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, was granted, and she was found disabled as of January 21, 2003. [Tr. 13].

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

However, on February 21, 2014, during a subsequent Continuing Disability Review, it was determined that Plaintiff was no longer disabled within the meaning of the Act as of February 1, 2014. [Tr. 150–51]. Following a hearing, on April 7, 2015, the decision was upheld on reconsideration. [Tr. 167–76]. Plaintiff then requested a hearing before an ALJ. [Tr. 177]. A hearing was held on August 4, 2015. [Tr. 65–81]. On August 19, 2015, the ALJ found that Plaintiff was not disabled as of February 1, 2014. [Tr. 97–112]. The Appeals Council granted Plaintiff's request for review and remanded the decision back to the ALJ for reconsideration. [Tr. 113–16]. A hearing was held by the ALJ on April 27, 2017 [Tr. 49–64], as well as a supplemental hearing on September 28, 2017 [Tr. 34–48]. On October 24, 2017, the ALJ again found that Plaintiff was not disabled as of February 1, 2014. [Tr. 8–33]. The Appeals Council denied Plaintiff's request for review on April 12, 2018 [Tr. 1–5], making the ALJ's second decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on April 19, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. This case was subsequently reassigned to the undersigned on May 3, 2019. [Doc. 19]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The most recent favorable medical decision finding that the claimant was disabled is the determination dated April 4, 2005. This is known as the "comparison point decision" or CPD.
>
> 2. At the time of the CPD, the claimant had the following medically determinable impairments: chronic sore throat; reactive airway disease; hoarseness; chronic sinusitis; chronic rhinitis; mold

allergies; burning eyes; low back pain; and fatigue. These impairments were found to result in the residual functional capacity to perform less than sedentary exertion on a regular and sustained basis.

3. Through the date of this decision, the claimant has not engaged in substantial gainful activity since the CPD (20 CFR 404.1594(f)(1)).

4. The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through the date of this decision. Thus, the claimant has continued to have the same impairments that she had at the time of the CPD.

5. Since February 1, 2014, the claimant has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6. Medical improvement occurred on February 1, 2014 (20 CFR 404.1594(b)(1)).

7. After careful consideration of the entire record, the undersigned finds that, since February 1, 2014, the claimant has had the residual functional capacity to perform work at all exertional levels except that she is limited as described by Dr. Robert Blaine, MD, in Exhibit 19F, to occasional exposure to humidity and wetness and no exposure to dust, odors, fumes, and pulmonary irritants.

8. The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

9. Since February 1, 2014, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

10. Since February 1, 2014, the claimant has been capable of performing past relevant work as a teacher. This work has not required the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

11. The claimant's disability ended on February 1, 2014, and the claimant has not become disabled again since that date (20 CFR 404.1594(f)(7)).

[Tr. 13–22].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

### IV. CONTINUING DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

4

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant's initial application for disability benefits is evaluated pursuant to a five-step analysis in which the claimant bears the burden at the first four steps and the burden shifts to the Commissioner at step five who must prove that there is work available in the national economy that the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant who is found disabled and awarded benefits is thereafter subject to periodic reviews to determine her continued entitlement to benefits. 20 C.F.R. § 404.1594(a); *see Watts v. Comm'r of Soc. Sec.*, 179 F. App'x 290, 292 (6th Cir. 2006) ("[T]here is no presumption of continuing disability.") (citation omitted).

Whether a claimant continues to be disabled is determined pursuant to an eight-step analysis. 20 C.F.R. § 404.1594(f)(1)-(8). Specifically, the Commissioner must determine:

> (1) whether the claimant is performing substantially gainful activity; (2) whether the claimant has an impairment or combination of impairments that meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) whether there has been medical improvement that has decreased the medical severity of the claimant's impairments; (4) whether the medical improvement relates to the ability to work; (5) whether an exception to medical improvement applies; (6) whether the claimant's impairments in combination are severe; (7) whether the claimant has retained residual functional capacity and can perform past work; and (8) whether the claimant can perform any other substantial gainful activity.

*Delacotera v. Berryhill*, No. 3:16-CV-01464, 2017 WL 971935, at *3 (M.D. Tenn. Mar. 14, 2017) (citing 20 C.F.R. § 404.1594(f)(1)-(8)).

The Commissioner bears the burden at each step, *id.*, and must establish that the claimant is no longer entitled to benefits "because the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling," 42 U.S.C. § 423(f). To

meet his burden, the Commissioner must demonstrate that "(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (B) the individual is now able to engage in substantial gainful activity." *Id.*; *see* 20 C.F.R. § 404.1594(a) ("We must determine if there has been any medical improvement in your impairment(s) and, if so, whether this medical improvement is related to your ability to work."). "If substantial evidence supports both prongs, then the [Commissioner] correctly terminated [the claimant's] benefits." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

## V. ANALYSIS

Plaintiff claims that the ALJ failed to apply the correct legal standards when finding that her disability ended on February 1, 2014, as Plaintiff alleges that neither the ALJ or the state agency reviewing physicians made a "meaningful comparison of the evidence from the prior file compared to the evidence in the current file." [Doc. 16 at 10]. Further, Plaintiff contends that the ALJ's decision that her condition had medically improved is not supported by substantial evidence. [*Id.* at 10–12]. The Court will address Plaintiff's specific allegations of error in turn.

First, Plaintiff claims that the ALJ failed to perform a comparison of her prior and current medical evidence to determine whether her condition had medically improved. Rather, Plaintiff asserts that the ALJ improperly "merely made a conclusory statement that [her] condition had improved, and made no meaningful analysis of what symptoms, signs or laboratory findings had supposedly improved." [*Id.* at 10].

"When the cessation of benefits is at issue, as here, the central question is whether the claimant's medical impairments have improved to the point where [she] is able to perform substantial gainful activity." *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir.

6

2007) (citing 42 U.S.C. § 423(f)(1)).  As stated above, whether an individual is entitled to continued benefits depends on if "there has been any medical improvement in [the individual's] impairment(s) and, if so, whether this medical improvement is related to [the individual's] ability to work."  20 C.F.R. §§ 404.1594(b), 416.994(b).

The implementing regulations define "medical improvement" as "any decrease in the medical severity of [the individual's] impairment(s) which was present at the time of the most recent favorable medical decision that [the individual was] disabled or continued to be disabled."  *Kennedy*, 247 F. App'x at 764–65 (citing 20 C.F.R. § 404.1594(b)(1)).  However, "[m]edical improvement 'is determined by a comparison of prior and current medical evidence.'"  *Id.* at 765 (quoting 20 C.F.R. § 404.1594(c)(1)).  This determination "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [a claimant's] impairment(s)."  20 C.F.R. § 1594(b)(1).

In the disability decision, the ALJ found that medical improvement had occurred on February 1, 2014.  [Tr. 13].  The ALJ noted that the medical evidence of record supported a finding that there had been a decrease in the medical severity of Plaintiff's impairments and there was "no evidence of exacerbation of respiratory symptoms since the CPD."  [Tr. 14]. In support, the ALJ reviewed that Plaintiff had received only limited specialist evaluation or treatment, she had not required emergency room treatment or hospitalization for her impairments, and that her impairments were treated conservatively with only an Albuterol inhaler.  [*Id.*].  Additionally, the ALJ found that there was "no evidence of treatment for chronic sore throat, hoarseness, chronic sinusitis, chronic rhinitis, mold allergies, burning eyes, low back pain, and fatigue since the CPD."  [*Id.*].  The ALJ proceeded to find that

7

Plaintiff had the residual functional capacity to perform work at all exertional levels, except that she was limited to occasional exposure to humidity and wetness and no exposure to dust, odors, fumes, and pulmonary irritants. [*Id.*].

Ultimately, the Court finds that the ALJ improperly failed to perform a "comparison of prior and current medical evidence" to determine whether Plaintiff's condition had medically improved. *Kennedy*, 247 F. App'x at 765 (quoting 20 C.F.R. § 404.1594(c)(1)). In *Kennedy*, the Sixth Circuit found that the ALJ properly detailed the claimant's then-current functional abilities, but failed to make the required comparison to the initial RFC determination. *Id.* Here, the ALJ failed to assess Plaintiff's current RFC and compare it to her RFC at the time of the comparison point decision date to determine whether her impairments had improved. *See id.* ("While the ALJ correctly pointed to various functional abilities possessed by Kennedy, . . . no effort was made by the ALJ nor any medical source to *compare* her abilities or her limitations to those possessed at the time of the initial determination.") (emphasis in original).

While the ALJ noted that there was no evidence of any exacerbation of Plaintiff's respiratory impairments since the CPD, as well as detailed Plaintiff's limited treatment, he failed to support the findings that Plaintiff's condition had improved since the earlier finding of disability. *See, e.g.*, *Schweihofer v. Comm'r of Soc. Sec.*, No. 17-14222, 2019 WL 1339611, at *10 (E.D. Mich. Feb. 22, 2019) ("Indeed, the ALJ's opinion does not analyze the degree to which Schweihofer improved at all; there is simply no analysis as to the suggestion that Schweihofer's improvement from the baseline indicates an ability to work."), *report and recommendation adopted by*, 2019 WL 1327186 (E.D. Mich. Mar. 25, 2019).

8

However, although the ALJ's discussion in support of his finding that Plaintiff's medical improvement occurred on February 1, 2014 was conclusory and insufficient, the Court will consider the decision as a whole. *See Jackson v. Comm'r of Soc. Sec.*, No. 1:17-CV-335-TRM-SKL, 2018 WL 5316028, at *6 (E.D. Tenn. Oct. 9, 2018) ("If the decision had otherwise shown there was substantial support for ALJ Morehead's finding of medical improvement, any error in not specifying the evidence under the 'medical improvement' heading would be harmless."), *report and recommendation adopted by*, 2018 WL 5315197 (E.D. Tenn. Oct. 26, 2018).

The ALJ found that although Plaintiff's medically determinable impairments could have reasonably been expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical record. [Tr. 16]. First, the ALJ noted that Plaintiff alleged continuing disability "due to chemical insensitivities, occupational asthma, and restrictive lung disease." [Tr. 14]. The ALJ detailed Plaintiff's testimony at the August 4, 2015, April 27, 2017, and September 28, 2017 hearings. [Tr. 14–15].

Next, the ALJ reviewed various pulmonary function testing. [Tr. 16]. The ALJ noted that the prior disability decision, dated April 4, 2005, referenced July 2003 studies showing "a borderline restrictive impairment with an FVC of 78 percent and total lung capacity reduced at 68 percent." [*Id.*]; *see* [Tr. 88]. Further, the ALJ found that "[t]he record reflects only limited medical evidence of evaluation or treatment since the CPD." [Tr. 16]. The ALJ also reviewed Plaintiff's treatment with Dr. Eckardt Johanning, M.D., MSc, as well as Plaintiff's pulmonary function testing in 2013 and 2014. [*Id.*]. For example, in June of 2014, Plaintiff's FVC was 81 percent of predicted, and "[t]he test interpretation was only mild obstructive abnormality with no

9

restrictive abnormality and diffusing capacity within normal limits." [*Id.*]. Plaintiff's most recent pulmonary function testing occurred in December of 2016, and her pre-bronchodilator FVC during testing was 69, 77, and 79 percent of predicted. [*Id.*].

Plaintiff testified that she prefers to be treated by "naturopathic doctors who use food supplements to treat her," but that she only visits the emergency room when she is unable to breathe. [Tr. 15]. The ALJ noted that Plaintiff was treated by Dr. Jerry Redmond of Women's Nutritional Health Center, as well as Ms. Beth Hovis, ND, CNHP, of the Fayetteville Herb Shop, although these treating sources did not opine on Plaintiff's functional abilities. [Tr. 17]. Accordingly, the ALJ found that there was no evidence of treatment for exacerbations of her respiratory issues, as Plaintiff was treated conservatively with only an Albuterol inhaler. [*Id.*]. Additionally, while Plaintiff alleged side effects from prescribed medication, the ALJ found that this allegation was not supported by the medical record. [*Id.*]. The ALJ detailed that there was no evidence of the need for further medications or oxygen, or any treatment for Plaintiff's reported symptoms. [*Id.*]. Further, the ALJ stated that there was no record of any emergency treatment or hospitalizations. [*Id.*]. Lastly, the ALJ contrasted Plaintiff's testimony that she does not do anything with the activities reported in her function report. [*Id.*].

The ALJ then summarized the May 7, 2015 letter written by Dr. Johanning. [Tr. 17]. In this letter, Dr. Johanning stated that he treated Plaintiff from 2003 to 2014 for her occupational health problems, and that she had a history of medical problems related to reported indoor environmental quality issues—including excessive dampness and mold at her prior workplace. [Tr. 674]. Therefore, Dr. Johanning noted that Plaintiff displayed signs of primarily respiratory problems with occupational asthma, sinusitis, and work-related allergy/hypersensitivity, and that

10

she was treated with respiratory medications and environmental control/avoidance. [*Id.*]. Therefore, Dr. Johanning opined that Plaintiff was unable to resume her regular work activities due to the combination of the environmental conditions and her significant occupational asthma, she was advised to avoid indoor environmental settings with unsanitary conditions, and she "has a permanent total disability in her field of work." [*Id.*].

Next, the ALJ summarized Plaintiff's two physical examinations with Dr. Marianne Filka, M.D., on December 12, 2013 and November 30, 2016. [Tr. 18]. During the December 12, 2013 examination, Dr. Filka noted that Plaintiff reported that she used a metered-dose Albuterol inhaler, and upon examination, Plaintiff's lungs were clear to auscultation and percussion until she coughed and then she had a few expiratory wheezes. [Tr. 595–97]. Dr. Filka stated that Plaintiff's speech was initially clear, but that she developed hoarseness throughout the examination, as she felt like she was reacting to some of the chemical smells in the building. [Tr. 598]. Dr. Filka diagnosed, in relevant part, chemical sensitivity with secondary reactive airway problems, headaches, pruritus, dry and burning throat and hoarseness, intermittent rashes, with hair loss in the past; as well as a history of possible restrictive lung disease, allergies to multiple medications, food and mold allergies, and migraine headaches. [*Id.*]. After reviewing provided medical records, as well as conducting the physical examination, Dr. Filka opined that Plaintiff was "best confined to her immediate home environment, where she can regulate the chemicals she comes into contact with." [*Id.*].

During the November 30, 2016 examination, Dr. Filka first noted that Plaintiff listed the Albuterol inhaler as her only current medication. [Tr. 911]. On examination, Plaintiff's skin was positive for lumps and bumps, as well as positive for migraine and tension headaches, although

11

Dr. Filka noted some dysplastic nevi on her trunk. [Tr. 912]. Additionally, Plaintiff's lungs were positive for trouble breathing, wheezing, or pain with breathing. [*Id.*]. Dr. Filka diagnosed severe chronic progressive chemical sensitivities, multiple chemical allergies (with reactions that include several severe symptoms), allergies to multiple medications, a history of tension headaches and chronic rhinitis, dysplastic nevi syndrome, migraine headaches, restrictive lung disease, and asthma. [Tr. 914]. Accordingly, Dr. Filka opined that "because of the severity of her chemical sensitivities and [ ] the severity of her reaction to chemicals as well as mold and certain foods," Plaintiff at the present time was "capable of activities of daily living only within her home." [*Id.*]. Dr. Filka noted that Plaintiff had difficulty leaving her home for even short periods of time, and while it would be possible for Plaintiff to have a home-based job, due to her "chemical sensitivities and the lack of treatment for this[,] she is basically home bound." [Tr. 915].

The ALJ also reviewed the February and May 2014 opinions of the nonexamining state agency physicians, who found that Plaintiff "should avoid concentrated exposure to humidity, fumes, odors, dusts, gases, and poor ventilation and that significant medical improvement did occur." [Tr. 19]. Additionally, after remand, the nonexamining state agency physicians found in December 2016 and February 2017 that Plaintiff did not have a severe physical impairment. [*Id.*].

During the August 4, 2015 hearing, Dr. Theron Blickenstaff, M.D., an impartial medical expert, testified regarding Plaintiff's occupational asthma and symptoms. [Tr. 73]. Dr. Blickenstaff explained that Plaintiff's claimed condition "is not universally accepted by mainstream medicine," and "there are no objective tests for it." [Tr. 74]. Additionally, Dr. Blickenstaff reviewed Plaintiff's "three sets of pulmonary function studies that are at worst, very,

12

very mildly abnormal" and noted some questions regarding the validity of the tests, although some abnormal breath sounds were heard on physical examination. [*Id.*]. Dr. Blickenstaff also testified that he did not dispute the existence of asthma, but that no record existed of any hospital admissions or emergency room visits. [*Id.*]. Therefore, Dr. Blickenstaff testified that "the objective evidence in the record would call for a limitation on exposure to high levels of vapors, fumes, and dusts," while "[o]ther physical limitations would depend on the credibility of the subjective complaints." [*Id.*]. Dr. Blickenstaff stated that he was unable to make a conclusion regarding whether Plaintiff's condition had improved, although the results of her pulmonary function testing had not changed significantly. [*Id.*].

Lastly, after remand from the Appeals Council, Plaintiff was consultatively examined by Dr. Robert Blaine, M.D., on December 29, 2016. [Tr. 677–92]. The ALJ reviewed Dr. Blaine's opinion in the disability decision, noting that Plaintiff reported that she had an Albuterol inhaler for emergencies, although she had not used it. [Tr. 677]. Further, Dr. Blaine found that upon examination, Plaintiff's lungs were clear to auscultation and that she was not dyspneic. [Tr. 678]. Dr. Blaine diagnosed chemical sensitivities and occupational asthma, and ordered pulmonary function testing. [Tr. 678]. Plaintiff's pre-bronchodilator FVC was 69 percent of predicted, 77 percent of predicted, and 79 percent of predicted. [Tr. 680]. Plaintiff's pre-bronchodilator FEV-1 was 78 percent of predicted and 80 percent of predicted. [*Id.*]. Accordingly, Dr. Blaine opined that due to her occupational asthma and multiple inhalant sensitivities, Plaintiff was limited to occasional exposure to humidity and wetness, and no exposure to dusts, odors, fumes, and pulmonary irritants. [Tr. 690].

In the disability decision, the ALJ first assigned great weight to the finding of the non-examining state agency physicians that medical improvement had occurred, but assigned little weight to their assessed limitations because they were not supported by medically acceptable clinical findings, as well as were inconsistent with other medical evidence. [Tr. 20]. Additionally, the ALJ assigned little weight to Dr. Johanning and Dr. Filka's opinions because they were inconsistent with the total record, as well as because Dr. Johanning and Dr. Filka did not review subsequent new evidence. [*Id.*]. Further, the ALJ noted that although Dr. Filka found that Plaintiff was restricted to her home, her assessment was based heavily on Plaintiff's subjective complaints, and Plaintiff testified at the hearing that she does spend time outside on her deck. [*Id.*]. The ALJ assigned some weight to Dr. Blickenstaff's assessment, but assigned great weight to Dr. Blaine's opinion because it was supported by medically acceptable findings and diagnostic techniques, as well as consistent with the medical record. [*Id.*].

The ALJ then repeated his general reasons for finding that Plaintiff's medical condition had improved—that Plaintiff had received limited follow-up treatment for her impairments; her conservative treatment with only an Albuterol inhaler; the absence of emergency department treatment or hospitalizations for any symptoms in the record; and no evidence of exacerbation of her symptoms regarding treatment. [*Id.*].

In *Kennedy v. Astrue*, the Sixth Circuit found that as the claimant appeared to have the same or similar functional abilities at the time of the initial determination, the ALJ's finding that she had experienced medical improvement was not supported by substantial evidence. 247 F. App'x 761, 764–66 (6th Cir. 2007). Similiarly, in the present case, "no effort was made by the ALJ . . . to *compare* her abilities to those possessed at the time of the initial determination." *Id.*

14

at 765. Although the ALJ based his decision, in part, on Plaintiff's lack of emergency room visits and conservative treatment, the ALJ also failed to note the environmental control utilized as treatment by Plaintiff's treating physician, Dr. Johanning. [Tr. 674]. Further, Dr. Filka opined that Plaintiff was "basically home-bound" due to the "lack of treatment" for her chemical sensitivities. [Tr. 914]. While there is no presumption of continuing disability, the "ultimate burden of proof lies with the Commissioner in termination proceedings." *Kennedy*, 247 F. App'x at 764 (internal citation omitted); *see* 20 C.F.R. § 404.1594(b)(5) and (f)(7).

Therefore, while the ALJ arguably established that Plaintiff's condition had not worsened, he did not appropriately support his finding that Plaintiff's condition had improved. The ALJ failed to establish how specific symptoms, signs, or laboratory findings demonstrated a medical improvement in Plaintiff's condition, as well as how this improvement resulted in an increase of Plaintiff's functional capacity to perform work. *See* 20 C.F.R. § 404.1594(b)(1)(i). Although the ALJ referenced Plaintiff's pulmonary function tests, he did not compare the respective findings or assign great weight to any medical opinion that compared the results. The ALJ relied upon recent medical opinions and Plaintiff's treatment record after the CPD, but did not make specific comparisons to her past impairments and limitations. Ultimately, the ALJ failed to appropriately analyze how Plaintiff's condition had improved since the earlier finding of disability.

Accordingly, the Court finds that the ALJ's finding that Plaintiff's medical condition had improved is not supported by substantial evidence, as the ALJ failed to compare Plaintiff's limitations from her impairments to those at the CPD. *See, e.g.*, *Schweihofer v. Comm'r of Soc. Sec.*, No. 17-14222, 2019 WL 1339611, at *10 (E.D. Mich. Feb. 22, 2019)

("Fundamentally, what is missing from the ALJ's decision on medical improvement is any discussion of a *comparison* of Schweihofer's abilities and limitations as of May 24, 2016 and before that date based on the medical evidence purporting to show medical improvement."), *report and recommendation adopted by*, 2019 WL 1327186 (E.D. Mich. Mar. 25, 2019); *Blevins v. Astrue*, No. CIV.A. 11-74-DLB, 2012 WL 3149343, at *6 (E.D. Ky. July 31, 2012) ("Although the ALJ 'considered the complete medical history consistent with 20 CFR 416.912(d)' and based his determination primarily upon the new evidence, there is no indication that he considered the new evidence in light of that previously considered in rendering the 2004 decision or that any comparison was made.").

Due to the ALJ's stated reasons for finding that medical improvement had occurred, the Court finds that this case should be remanded for further proceedings rather than an immediate reinstatement of benefits. *Cf. Kennedy*, 247 F. App'x at 768–69 (stating further proceeding are not necessary where "evidence of medical improvement is lacking" and the Commissioner had the burden of proof). On remand, the ALJ is directly to appropriately compare Plaintiff's ability and limitations at the time of the CPD consistent with this opinion.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 15**] will be **GRANTED**, and the Commissioner's Motion for Summary Judgment [**Doc. 17**] will be **DENIED**. This case will be **REMANDED** to the SSA for the ALJ to reconsider Plaintiff's medical improvement in accordance with this opinion.

ORDER ACCORDINGLY.

*[signature: Bruce Guyton]*
United States Magistrate Judge